## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

   vs.                       **Case No. 08-40003-01-RDR**

MEGAN N. WINGER,

          Defendant.

_____

### MEMORANDUM AND ORDER

This is an appeal from a criminal misdemeanor conviction before a magistrate judge. Specifically, the defendant appeals the magistrate judge's ruling denying her motion to suppress. Having carefully reviewed the record and the arguments of the appellant, the court is now prepared to rule.[1]

The defendant entered a guilty plea to possession of marijuana in violation of 21 U.S.C. § 844. The defendant reserved the right to appeal the magistrate's ruling denying her motion suppression.

On appeal, the defendant argues that her Fourth Amendment rights were violated. She contends she was illegally stopped because the law enforcement officer had no reasonable indication that she was involved in criminal activity. She therefore contends that the evidence seized should have been suppressed.

_____

[1] Following the notice of appeal, the court established a schedule for briefing. The defendant timely filed her brief. The government failed to file a brief. The court issued an order directing the government to show cause why this appeal should not be considered as uncontested. The government again failed to respond.

On December 29, 2006 at approximately 10:50 p.m., Military Policeman Johnson was patrolling near Moon Lake on the Fort Riley military reservation. Moon Lake is a recreational area. It is open year-round and has no restrictions on when people may visit it. Officer Johnson testified that the temperature on that night was in the high 30's or low 40's. He indicated that it was raining. He also stated that the lighting in that area was poor. Officer Johnson observed a vehicle traveling up a hill toward Moon Lake. He saw the car stop and then proceed onward. Officer Johnson became suspicious. He testified that the only reason anyone would travel to Moon Lake in the winter would be to have sex or use illegal drugs. Officer Johnson proceeded to travel in the direction that the car had traveled. He turned off his lights. As he approached, he saw the vehicle stopped near a gazebo in the area. Several individuals were outside the car. He was able to see them because the headlights of that car were on. There was still a drizzling rain at this time. Officer Johnson began to drive towards the vehicle, again with his lights off. He then saw the individuals get into the car and begin to drive away. The car drove in the direction from which he was coming. Officer Johnson turned on the lights of his car. As the cars passed, Officer Johnson put his hand outside the window and directed the car to stop. The car was traveling at a speed of five to ten miles per hour. The car proceeded to stop. Officer Johnson then asked the

2

driver what she was doing.  The driver, who was later identified as
the defendant, Megan Winger, said they had not been to that side of
the lake and they wanted to see it.  Officer Johnson found this
explanation suspicious because of the time of year, the time of day
and the weather conditions. Officer Johnson asked the driver to
pull the car over to the side of the road, which she did.  He then
asked for identification from all of the people in the car.  He
asked them why they were at the lake.  He received the same
response as that given by the driver.  He then asked Winger if
there was anything illegal in the car.  She said no.  Officer
Johnson then asked for consent to search the car.  Winger said yes.
Officer Johnson found some debris on the floor of the car that
appeared to be marijuana.  He again asked Winger if there was
anything illegal in the car.  Winger then broke down and began to
cry.  She asked him "not to do this."  She said she would give him
everything she had if he would not "do this."  She subsequently
provided two small baggies of marijuana to Officer Johnson from her
jacket pocket.

In denying the motion to suppress, the magistrate acknowledged
that the "circumstances in this case are at the outer limit of the
legal standards."  The magistrate found that the following
circumstances provided reasonable suspicion for the officer to stop
the defendant's vehicle:  (1) the time of year, during the "dead of
winter," (2) the time of day, (3) the weather conditions, (4) the

entry into the vehicle by the occupants after Officer Johnson began driving to the area of the vehicle with his lights out, and (5) Officer Johnson's belief that individuals traveled to Moon Lake in the winter only to have sex or use illegal drugs.

When reviewing a magistrate's denial of a motion to suppress in a misdemeanor case, this court must examine the findings of fact for clear error and review <u>de</u> <u>novo</u> whether the investigatory stop and search violated the Fourth Amendment.   <u>See</u> <u>United States v.</u> <u>Patterson</u>, 472 F.3d 767, 775 (10th Cir. 2006); <u>United States v.</u> <u>Lyons</u>, 510 F.3d 1225, 1234 (10th Cir. 2007).   The court must look at the totality of the circumstances to determine whether an investigatory stop and search were justified.   <u>United States v.</u> <u>Moore</u>, 22 F.3d 241, 243 (10th Cir. 1994).

The Fourth Amendment protects individuals from "unreasonable searches and seizures."   U.S. Const. amend. IV.   In <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968), the Supreme Court held that an officer may conduct a brief, investigatory stop of an individual if the officer has a reasonable, articulable suspicion that the individual is involved in criminal activity.   Reasonable suspicion does not exist solely on the basis of an officer's hunch.   <u>United States v.</u> <u>Arvizu</u>, 534 U.S. 266, 273 (2002).   To satisfy the Fourth Amendment, the officer must be able to articulate some minimal, objective justification for a <u>Terry</u> stop.   <u>United States v. Melendez-Garcia</u>, 28 F.3d 1046, 1051 (10th Cir. 1994).   Officers may form a reasonable

4

suspicion of criminal activity by observing exclusively legal activity so long as the defendant's legal behavior suggests that criminal activity may be afoot.  See <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123-24 (2000) (concluding that officers had reasonable suspicion to conduct an investigatory stop because the defendant was present in a high crime area and he subsequently fled from the police without provocation).

Applying the aforementioned standards to this case, the court finds that Officer Johnson did not have a reasonable articulable suspicion to stop Winger.  Officer Johnson appeared to suggest that Moon Lake was a high crime area in the winter.  He did indicate, however, that there are some people who do frequent the area in the winter to fish or camp.  The magistrate made no finding that Moon Lake was a high crime area in the winter, and the court certainly finds no basis for such a conclusion.  Nevertheless, presence in a high crime area is not, standing alone, enough to provide reasonable suspicion, but it may be a "relevant contextual consideration" in a <u>Terry</u> analysis.  <u>Wardlow</u>, 528 U.S. at 124. Officer Johnson also believed the lateness of the visit to Moon Lake provided additional reason to suspect criminal activity. Again, the lateness of the hour is another fact that may raise the level of suspicion.  See <u>United States v. Knox</u>, 950 F.2d 516, 519 (8th Cir. 1991).  However, during his observation of the vehicle and its occupants, Officer Johnson saw nothing that suggested illegal

activity.  He did note that after observing the people outside the vehicle near the gazebo, they returned to their vehicle and drove away as he approached in his car with the lights off.  He recognized, however, that Winger's vehicle did not speed away from the scene.  Rather, the Winger vehicle proceeded toward his vehicle, traveling at five to ten miles an hour.  The facts known to Officer Johnson at the time of the stop reflect no more than an "inchoate and unparticularized suspicion or hunch."  <u>Terry</u>, 392 U.S. at 27.  The court simply fails to find that these facts, considered in their totality, supported a reasonable suspicion that the occupants of the vehicle driven by Winger were engaged in criminal activity.  <u>See</u> <u>United States v. Davis</u>, 94 F.3d 1465, 167-68 (10th Cir. 1996) (defendant's criminal history and evasive attitude--walking away from police, dropping eye contact and keeping hands in pocket--did not, even when coupled with presence in a high crime neighborhood, give rise to reasonable suspicion).  Accordingly, the decision of the magistrate must be reversed.  The court shall remand this action to the magistrate for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated this 18th day of April, 2008 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge